IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| G.L.M, by his Guardian, Karlene Papen, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action |
| vs. | ) ) | No. 08-0959-CV-W-JCE-SSA |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff, G.L.M., is the son of Emily McDaniels, who was the original claimant in this case, and who is now deceased. Plaintiff is a minor, and Karlene Papen, mother of Emily McDaniels, was appointed plaintiff's guardian on November 26, 2008. Claimant, who died on September 13, 2008, did not leave a surviving spouse.

Plaintiff is appealing the final decision of the Secretary denying claimant's application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. § § 401, et seq., and her application for supplemental security income benefits ["SSI"] under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's

2

daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Claimant was 24 years old at the time of the hearing before the ALJ, and had a twelfth grade education. She alleged that she was disabled due to lupus, difficulty sleeping, shingles, possible gallstones, and neck and back pain. She had past relevant work as a cashier, waitress, receptionist, and retail store clerk.

A hearing was held on October 24, 2006, with a decision reached on February 26, 2007, in which the ALJ found that claimant was not under a disability. The ALJ found that claimant met the insured status through June 30, 2004, and that she had not engaged in substantial gainful activity since December 15, 2002, the alleged onset date. He further found that she had the following medical conditions that imposed limitations on her ability to work: "obesity, and athralgias and myalgias associated with fibromyalgia or sytemic lupus erythematosus (SLE)." [Tr. 23]. It was also the finding of the ALJ that, although plaintiff had been treated for depression, insomnia, herpes zoster and a seizure disorder, those conditions were resolved or under control with medication. He further found that in terms of the listed impairments for SLE,

3

"the claimant arguably has anatomical deformity and chronic joint pain and stiffness with limitation of motion but it has been primarily noted to be limited to a few of her finger joints. Accordingly, she does not have involvement of a major peripheral weight bearing joint or major peripheral joint in each upper extremity resulting in an inability to perform fine and gross movements effectively." [Tr. 24]. He also found that there were not significant signs of muscle involvement, ongoing constitutional symptoms or signs of severe fatigue, fever, malaise, and weight loss to meet or equal the SLE listing, 14.02B. Therefore, the ALJ found that claimant did not suffer from an impairment or combination of impairments that met or medically equaled a listed impairment. He found her not entirely credible.

At the hearing before the ALJ, claimant testified that she quit working in December of 2002 because of aches and pains, and because she found out she was pregnant. She was diagnosed with lupus by a primary care physician in June of 2003. Claimant was started on Prednisone in 2003, and was still taking it at the time of the hearing. She stated that doctors had also attributed her pain to pleurisy and fibromyalgia. She had been prescribed narcotic pain medication, including Percocet, but reported at the hearing that she still had throbbing pain in her hands, as well as pain in her knees, low back, and feet. Regarding household activities, her parents helped her with her three-year-old son, although she could feed him and pick up after him. Claimant also stated that she was prescribed medication for sleeping. She had taken a lot of different medications for depression, with varying results. She had a seizure after being prescribed Wellbutrin, and was then placed on Prozac, which had not improved her depression, although the prescription had recently been increased. She also took Elavil some of the time for pain and to help with sleeping; additionally, claimant took Zantac and Flexeril. She testified that

4

she couldn't grip anything with either hand, which had gotten worse in the past year. She could not use small pencils or a pen because she could not grip them. Weather exacerbated her pain and problems with her hands. She thought she could sit and stand a few minutes before she would have to alternate positions. It would also be necessary for her to lie down. She could not walk very far from her house because of pain in her feet, which she described as throbbing, sharp and stabbing. She had knee problems with bending and sitting, as well as in her low back. She testified that she did not do anything socially. It was claimant's testimony that she also suffered from sores in her mouth, redness and a rash on her face, fatigue and depression, the latter of which had gotten worse since she was diagnosed with lupus. She stated that she did not think that she could work because her feet hurt all the time, she did not have any strength in her hands, and she felt bad all the time. She also suffered from pleurisy, which caused her chest to get tight and made it hard to breathe. She was also getting numbness in her feet, which caused her to fall.

Plaintiff asserts that the ALJ failed to conduct a proper credibility analysis; that he failed to give controlling weight to the opinion of claimant's treating physicians; and that he failed to consider all her GAF assessments.

Turning first to plaintiff's contention regarding the treating physicians, it is asserted that the ALJ erred by not affording proper weight to the opinion of the treating physician, Dr. Ahmad Awad, who is a specialist, and to claimant's psychiatrist, Dr. Mahmood. A review of the record indicates that Dr. Awad signed a medical statement on May 19, 2006, in which he diagnosed claimant with "deforming arthritis, fibromyalgia, systemic lupus." [Tr. 822]. It was his opinion that claimant could not lift or work and suffered from extreme pain. The ALJ rejected this opinion because Dr. Awad was not a rheumatologist, but rather, was a nephrologist.

5

He noted that Dr. Awad first began treatment with claimant in March of 2004, until December of 2005, to primarily manage her pain medication and monitor her renal functioning due to lupus nephritis. The ALJ rejected the opinion of Dr. Awad, whom he found arguably to be a treating physician, because he did not believe the limitations to be clearly supported by medical signs and findings, and the doctor's own treatment records. This was based on the fact that the ALJ found that Dr. Awad noted improvement in claimant's condition with treatment; that the rheumatologist, who saw claimant in July of 2005, indicated that any work limitations would be related to narcotic dependence and fatigue; and that her fatigue was addressed once she was treated for depression. The ALJ also considered the record of Dr. Mahmood, claimant's treating psychiatrist, who assessed her with marked difficulties with complex tasks, and moderate limitations in her attention, concentration, and pace. The ALJ found that this opinion was inconsistent with the doctor's own records, indicating that plaintiff responded well to antidepressants, and therefore, rejected it.

While a treating physician's opinion is ordinarily to be given substantial weight, it must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

Having carefully reviewed the record as a whole, the Court finds that the ALJ erred in the weight afforded to the treating physician and psychiatrist. The medical records in this case indicate that claimant was variously diagnosed with lupus, pleurisy, fibromyalgia, and depression, among other conditions. The pain she suffered is well-documented in the records, and it is clear that she took a plethora of medication for her various medical problems, including

Prednisone on a long-term basis, and pain medication to the extent that she developed a narcotic dependency. There is not substantial evidence for the ALJ to have rejected Dr. Awad's opinion, in part because he was a nephrologist, when the record clearly demonstrates that he was treating claimant regarding her renal functioning in relationship to lupus. Additionally, the record indicates that Dr. Latinus, a rheumatologist, diagnosed claimant with "lupus, narcotic dependency." [Tr. 870]. It was his opinion that fatigue from lupus and narcotics might limit claimant's job performance. Contrary to the ALJ's conclusion, the rheumatologist did not indicate that fatigue was cause by depression. Regarding the opinion of the psychiatrist, a review of the record indicates that the doctor found claimant to be markedly limited regarding complex tasks, not limited with respect to simple tasks, and to have moderate limitations regarding attention, concentration and pace. He assessed her with a Global Functioning Assessment ["GAF"] score of 59, which is consistent with his opinion regarding her limitations. Further, there is other evidence in the record to support these limitations, including an assessment of a GAF of 40-50 in December of 2005, and a GAF of 55 on May 1, 2006. Therefore, the Court finds that there is other medical evidence in the record to support Dr. Mahmood's opinion, and there was not substantial evidence to reject the opinion of claimant's treating psychiatrist.

Claimant also asserts that the ALJ erred in failing to consider the deformity of her hands. In the hypotheticals posed to the vocational expert, the ALJ asked the expert to consider that the claimant had "limited bilateral hand or fingering ability, but would not prevent them from using a computer keyboard." [Tr. 981]. There is no evidence in the record, however, to indicate that plaintiff had the ability to use a keyboard. Further, although the record contains more than one

mention of claimant's swan neck deformity of all fingers in both hands and boutonniere's deformities in her hands, these diagnoses were not presented to the vocational expert. The expert did state, moreover, that the position of receptionist and telephone solicitor would be eliminated if the claimant could not use a keyboard. Similarly, the positions of clerical sorter and hand packager, as defined by the DOT, indicated that the jobs required extensive use of the hands and fingers. Therefore, regarding the ALJ's finding that claimant could have performed a significant range of sedentary work, such as clerical sorter, telephone solicitor, and hand packer, the Court has fully reviewed the evidence in this case, and finds that there was not substantial evidence in the record to support the ALJ's findings regarding her RFC.

Given the substantiated medical evidence in the record regarding claimant's impairments, from various sources, including lupus, fibromyalgia, depression, and deformities of her fingers and hands, with difficulties in grip and pain in her fingers, hands, and wrists, the Court finds that the ALJ erred in finding that claimant was not disabled. Accordingly, it is the finding of this Court that the decision should be reversed.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the decision of the ALJ. It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England  
 JAMES C. ENGLAND  
United States Magistrate Judge

Date: 1/22/10